[Civ. No. 2380.   Fourth Appellate District.—July 10, 1940.]

W. E. WHITACRE, Plaintiff; WILLIAM SHAPIRO, INC.
(a Corporation), Plaintiff and Appellant, v. ED. C.
HALL et al., Respondents; THE FIDELITY AND
CASUALTY COMPANY OF NEW YORK (a Corpora-
tion), Cross-Defendant and Appellant.

Harry W. Horton for Appellants.

Whitelaw & Whitelaw for Respondents.

BARNARD, P. J.—Williams Shapiro, Inc., which will be referred to as the plaintiff, was licensed as a vegetable broker under the Agricultural Code of this state, its bond having been furnished by the Fidelity and Casualty Company of New York. During the 1936 season, the plaintiff entered into a written contract with the defendants, under the terms of which the defendants agreed to consign to the plaintiff at El Centro fifty cars of lettuce during the season, the lettuce to be of a certain quality and to carry certificates of federal-state inspection. The lettuce was to be handled by the plaintiff on a commission basis, but the plaintiff guaranteed to the defendants $275 per car "irrespective of the final outcome of the deal". The contract provided for an advance to the defendants of $5,000, being $100 per car, and for the further payment to the defendants of $175 as each car was loaded. It also provided for "an accounting of the proceeds from the sales" at the end of the deal, and contained a provision that "all railroad or other claims" should be the property of the defendants and that "all instruments on each car" and "notations on conditions of cars on arrival" were to be sent to them by the plaintiff.

The defendants delivered forty-five cars of lettuce to the plaintiff at El Centro with the necessary bills of lading and certificates of inspection, all of which were accepted by a representative of the plaintiff. As each car was delivered an additional $175 was paid to the defendants. Accounts of sales of the various cars were furnished to the defendants. Because of unusual freezing weather a part of the lettuce in some of the cars was damaged and certain crates of lettuce were unsalable when they reached the eastern markets. The plaintiff filed claims against the railroad companies based upon this damage and collected various amounts therefor, which amounts it retained.

In this action which followed, the plaintiff sought to recover $500 covering the advance on the five cars which had not been delivered, with $350 as damages for the nondelivery of those five cars, and further sought an accounting, together with a reformation of the contract to the end that the plaintiff in such accounting should have the benefit of the amounts it had collected on the claims against the railroads.

It was stipulated between the parties that the issue as to the reformation of the contract should be first tried and decided by the court, and that the trial on the other issues should be deferred until that matter was decided. After a trial on that issue it was decided in favor of the defendants. The court thereupon signed and filed so-called "findings of fact and conclusions of law" and a judgment in which, after reciting that the parties had stipulated to present the issues as to the construction of this contract and as to whether or not there was any fraud or mistake in connection with its execution, the court ordered and decreed that the written contract, which was set out in full, is the only contract existing between the parties; that such contract is without ambiguity or uncertainty; that the defendants are entitled to receive and retain the proceeds from railroad claims arising out of the shipment of the forty-five cars of lettuce; that reformation of the contract be denied; that an accounting between the parties be had; and that the defendants "be allowed their costs and that the same become a part of the memorandum of costs to be hereinafter, at the conclusion of this case, served and filed".

The plaintiff filed a notice of appeal from this so-called judgment. Thereafter, the defendants filed a cross-complaint

naming as cross-defendants the plaintiff and its bonding company, and praying for an accounting and for a judgment for the amount which it might be found the plaintiff had collected on the railroad claims. After a motion to strike out the cross-complaint was denied, an answer was filed and a further hearing had upon the remaining issues. A set of findings of fact and conclusions of law was then signed and filed, in which the court recites that it had theretofore made and filed ''findings of fact and conclusions of law and judgment respecting the construction of the contract'' between the parties; that said interlocutory judgment had been entered and filed; that the matter had come on for trial on the remaining issues, including those raised in connection with the cross-complaint, and upon an order theretofore made that an accounting be had; and that the matter had been submitted. It was then found that the plaintiff was entitled to a return of $500 out of the original $5,000 deposit; that the plaintiff had not been damaged by the failure to deliver the other five cars; that the accounting disclosed that the plaintiff had received and collected the sum of $4,305.93 to which defendants were entitled; and that the defendants were entitled to judgment for the difference, $3,805.93 with interest. A ''final judgment by the court after interlocutory judgment'' was then signed and entered in which, after reciting that the remaining issues had been submitted, the previous order or judgment on the issue of the validity and meaning of the contract was set forth *in haec verba,* and judgment was awarded the defendants for the balance due them as given in the findings. In accordance with the prayer of the cross-complaint, this judgment was entered against both the plaintiff and its bonding company and both have appealed from the judgment, from an order denying a new trial, and from an order denying a motion to strike the cross-complaint.

The plaintiff, on its appeal, makes no attack upon the results of the accounting except as to the amounts received in settlement of the railroad claims which were awarded to the defendants. In this regard, the plaintiff contends that it should be given credit for these amounts, or that it should receive the benefit therefrom. In other words, the contention is that the proceeds of these claims should be treated as belonging to the plaintiff. It is argued that under gen-

eral rules of law, applicable to consignors and consignees, the title to this lettuce remained in the defendants as consignors; that any loss or damage fell upon them; that any goods damaged in transit should be considered as not having been delivered to the plaintiff; and that if the defendants take the proceeds of the railroad claims the plaintiff is entitled to a corresponding return of the guaranteed payment which it advanced.

■ It may be conceded that this would be the logical result, in such a situation, in the absence of a specific agreement between the parties. But there is no reason why the parties could not, by contract, provide otherwise. The court has here found that the plaintiff had guaranteed to the defendants a minimum return of $275 a car, with the further provision that in addition thereto they were entitled to collect and retain any amounts arising from claims for damages against the railroads. The terms of the contract are reasonably susceptible to the interpretation thus placed upon it by the trial court. This was virtually conceded by the plaintiff, it having asked to have the contract reformed in that respect on the ground that it had been so worded by reason of fraud or mistake. The court found against it on that issue and there is ample evidence that the intention of the parties was as expressed in the contract and as found by the court, and that this intention was clearly disclosed by the defendants and acquiesced in by the plaintiff at the time the contract was signed. This is simply a case where the contract of the parties, rather than the general rules of law, must be controlling.

The only other points raised by the plaintiff are that the court erred in refusing to strike the cross-complaint, and in trying and rendering judgment on the remaining issues, because it was without jurisdiction to take further proceedings after an appeal was taken from the judgment which was entered at the conclusion of the hearing on the issues as to the validity and interpretation of the contract.

■ The first so-called judgment was merely a decision on preliminary questions, it having been stipulated that the trial of other issues should be deferred until those questions were decided. The first so-called judgment was not a final judgment and was not such an interlocutory judgment as is made appealable by the statute. (Sec. 963, Code Civ. Proc.)

While that judgment interpreted the contract and denied a reformation thereof, it did not establish any certain indebtedness, and, on the other hand, it directed that an accounting be had and referred to the memorandum of costs which should be filed "at the conclusion of this case". It was purely an interlocutory order or judgment, the appeal therefrom was of no effect, the court retained jurisdiction to proceed with the other issues raised in the action, and the giving of permission to file a cross-complaint was within the court's discretion. (*Clarke* v. *Baird*, 98 Cal. 642 [33 Pac. 756].) ■ Since the first judgment was not a final judgment it follows that the order refusing to strike the cross-complaint was not an appealable order. While the procedure followed, in recording the court's decision on the preliminary issues originally submitted, was unnecessarily formal and perhaps irregular, the legal effect remains the same and no prejudice has resulted.

■ The appeal of the bonding company presents a different question. That company furnished to the plaintiff the bond required by section 1265 of the Agricultural Code. That section provides that any producer-consignor of farm products claiming to have been injured by the fraud or deceit of a commission merchant may bring an action upon the bond against both principal and surety. It also provides that where a commission merchant fails to pay for farm products consigned to him an action may be brought by the director of agriculture for the benefit of all consignors who have filed statements of their claims with the director.

The cross-complaint in the instant action, which brought in the bonding company as a cross-defendant, mainly sought to recover from the plaintiff the amounts collected by it upon the railroad claims, and to secure bills of lading and other papers necessary to enable the defendants to prosecute such further claims of that nature as the plaintiff had not yet acted upon. The only allegations in the cross-complaint relating to fraud and deceit on the part of the plaintiff were that the plaintiff had failed to render true accounts of sales and to make settlement thereon, and that it had made false charges for commissions "upon an alleged collection of claims". While the court found that these allegations were true there is no finding giving the respects in which the accounts of sales were not true, and no finding as to how

much, if any, commission was improperly charged. The judgment against the bonding company is the same as that against the plaintiff, namely, for the exact amounts collected by the plaintiff upon the railroad claims, less the $500 which the plaintiff had advanced upon the five cars which were not delivered. In other words, the judgment is based upon the allegations of the cross-complaint which relate to the failure to turn over certain amounts in accordance with the contract, and not upon those which pertain to fraud and deceit.

Essentially, this action was one arising out of a dispute as to the terms of the contract and, on defendants' part, one to recover certain amounts to which this contract entitled them. It was largely, if not entirely, tried upon that theory and judgment was entered accordingly. If it be assumed that the bonding company had any liability on its bond, in connection with the particular payments here in question, that liability, under the provisions of the statute, was one to be enforced by the director of agriculture in an action brought by him and could not be enforced in this action. While the cross-complaint contains allegations charging fraud and deceit on the part of the plaintiff it was incumbent upon the defendants and cross-complainants to prove that they were injured by such fraud and deceit. This they failed to do. The only evidence of such fraud and deceit relates to the manner in which certain accounts were made to the defendants, with disputed testimony as to what was the general practice of the trade in that regard. We are pointed to no evidence, however, which shows that the defendants were injured in this connection and, in fact, the evidence indicates that they actually profited thereby. Moreover, the court made no finding which, with any reasonable inference therefrom, would support the judgment against the bonding company, based upon the theory that the defendants had been injured by any fraud or deceit on the part of the plaintiff. It rather clearly appears that the bonding company has here been improperly charged with liability for the payment of amounts which an accounting has disclosed that the plaintiff had failed to pay over to the defendants, and to which they were entitled.

The purported appeals from the first judgment and from the various orders are dismissed. The judgment in so far

as it is against the plaintiff is affirmed and in so far as it is against the cross-defendant, the Fidelity and Casualty Company of New York, is reversed.

Marks, J., and Griffin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 5, 1940, and the following opinion then rendered thereon:

THE COURT.—In this petition for rehearing the appellant William Shapiro, Inc., contends that it is entitled to a refund from the guaranteed advance of $275 per car of an amount equal to the value of the goods which were subsequently damaged, on the theory that the contract called for the delivery of merchantable produce and that to this extent this appellant never received such lettuce. As pointed out in our opinion in this case, the 45 cars of lettuce were, in accordance with the contract, delivered to this appellant at El Centro with the necessary bills of lading and certificates of inspection, all of which were there accepted by this appellant. This entire matter is controlled by the interpretation of the contract, all of which is sufficiently covered in our previous opinion.

It is further contended that under another provision of the contract this appellant was entitled to a commission of 8 per cent on the selling price of the lettuce, that the railroad claims which were awarded to the respondents were a part of this selling price, and that our opinion should be so modified as to allow this appellant to recover 8 per cent of the amounts realized upon the railroad claims. In our opinion we referred to the manner in which certain accounts were made to the defendants in connection with an issue as to fraud and deceit which was raised as to the other appellant. In the accounts thus made this appellant seems to have made returns that it had sold the damaged goods at the same prices as the good lettuce in the respective cars. In connection with the accounts so made this appellant charged its commission of 8 per cent on this supposed selling price. It is certainly not entitled to the 8 per cent commission on both amounts, relating to the same goods, and nothing is brought to our attention from which we can tell whether or not appellant has been prejudiced in this regard. In the absence of such a

showing we cannot arbitrarily order the substitution of the one amount for the other.

The petition for a rehearing is denied.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 4, 1940.